```
1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF COLORADO

3    Criminal Action No. 21-cr-104-RM-1

4     UNITED STATES OF AMERICA,

5          Plaintiff,

6          vs.

7     ZACHARY PAUL ANDERSON,

8          Defendant.

9    -----------------------------------------------------------

10                    REPORTER'S TRANSCRIPT

11                      Change of Plea

12   -----------------------------------------------------------

13        Proceedings before the HONORABLE RAYMOND P. MOORE,
     Judge, United States District Court for the District of
14   Colorado, commencing on the 22nd day of November, 2021, in
     Courtroom A601, United States Courthouse, Denver, Colorado.
15

16                        APPEARANCES
     For the Plaintiff:
17   DANIEL R. McINTYRE, Assistant U.S. Attorney, UNITED STATES
     ATTORNEYS OFFICE, 1801 California Street, Suite 1600, Denver, CO
18   80202

19

20   For the Defendant:
     MARY V. BUTTERTON, FEDERAL PUBLIC DEFENDER'S OFFICE, 633 17th
21   Street, Suite 1000, Denver, CO 80202

22

23

24
     KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room A259, Denver,
25   CO 80294, (303)335-2358
```

Kevin P. Carlin, RMR, CRR

21-cr-104-RM-1    Change of Plea    11-22-2021

1              P R O C E E D I N G S

2        (Proceedings commenced at 10:36 a.m.)

3        THE COURT:  We are here on 21-cr-104, United States

4    versus Zachary Paul Anderson.  Appearances from the seats,

5    please.

6        MR. McINTYRE:  Good morning, Your Honor.  Daniel

7    McIntyre on behalf of the United States.

8        THE COURT:  Good morning to you.

9        MS. BUTTERTON:  Good morning, Your Honor.  Mary

10   Butterton on behalf of Mr. Anderson.  Your Honor, Mr. Anderson

11   is in custody and joins me here at counsel table.

12       THE COURT:  Good morning to you.  Good morning to

13   Mr. Anderson.

14       THE DEFENDANT:  Good morning.

15       THE COURT:  What I would ask that you do is that you

16   both go to the podium.  And Ms. Butterton, if you would give him

17   the inside position, it tends to work better with the

18   microphone.

19       MS. BUTTERTON:  Got it.

20       THE COURT:  All right.  Mr. Anderson, before we can

21   proceed, you do have to take an oath to tell the truth, so what

22   I would ask that you do is raise your right hand.  My courtroom

23   deputy will administer that oath to you.

24       (The Defendant is Sworn)

25       THE COURT:  All right.  What's now happened is that

21-cr-104-RM-1     Change of Plea     11-22-2021

1  you've taken an oath, and therefore you're under oath.  And what

2  that means is that you have to answer my questions truthfully

3  this morning.  If you were to lie, what the Government could do

4  is charge you with additional crimes, perjury, making a false

5  statement.  The label is not really important.  The fact of the

6  matter is, though, that you would be charged with additional

7  offenses beyond anything that you're already facing.

8  Understood?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  So, in order to avoid that, I have a

11  simple rule, and that is this:  If I say something at any point

12  that you don't understand, and it doesn't matter why, you didn't

13  hear it or I said it in some kind of a bizarre way that you're

14  not quite sure what I meant, if you don't understand it, for

15  whatever reason, you let me know, and I will clear it up for

16  you.  Okay?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  What is your full name?

19             THE DEFENDANT:  Zachary Paul Anderson.

20             THE COURT:  How old are you, sir?

21             THE DEFENDANT:  Twenty-eight years old.

22             THE COURT:  How far did you go in school?

23             THE DEFENDANT:  I didn't make it past the ninth grade.

24             THE COURT:  Can you read?

25             THE DEFENDANT:  Yes, sir.

21-cr-104-RM-1     Change of Plea     11-22-2021

1        THE COURT:  Since the time that you were -- since the

2   time that this incident occurred, have you been treated for any

3   form of mental illness or addiction to narcotic drugs?

4        THE DEFENDANT:  Yes.  I have seen psychiatrists,

5   psychology.

6        THE COURT:  And is that at Florence?

7        THE DEFENDANT:  Correct.  I've seen them at Florence

8   and also at GEO.

9        THE COURT:  At GEO.  Okay.  I am asking this out of

10  sheer curiosity, because I'm not sure, did you burn the number

11  on the underlying sentence?  Did you finish that sentence?

12       THE DEFENDANT:  No, sir.  I still have more time to do

13  on that.

14       THE COURT:  Okay.  But for whatever reason, they put

15  you in GEO?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  Okay.  That's not normally what I would

18  expect, and that's why I got confused.  It doesn't really have

19  anything to do with anything, but you did indicate that you've

20  been seeing someone.  My question to you is in connection with

21  that help, has anyone been prescribing any type of medication

22  for you?

23       THE DEFENDANT:  Yes, sir.  I'm on Remeron.

24       THE COURT:  And what is that medication for?

25       THE DEFENDANT:  It's for depression and anxiety.

21-cr-104-RM-1     Change of Plea    11-22-2021

1        THE COURT:  Is it prescribed to you on a daily basis?

2        THE DEFENDANT:  Yes, sir.  Every night.

3        THE COURT:  Every night.  Did you take your dose last

4   night?

5        THE DEFENDANT:  Yes, sir.

6        THE COURT:  Is there anything about that medication

7   that interferes with your ability to think clearly and make

8   decisions for yourself?

9        THE DEFENDANT:  No, sir.  I am clearheaded.

10       THE COURT:  All right.  You anticipated my next

11  question.  Are you currently under the influence of any type of

12  drug, medication, or alcoholic beverage of any kind?

13       THE DEFENDANT:  No, sir.  Sober.

14       THE COURT:  And are you able to think clearly and make

15  decisions -- intelligent decisions for yourself today?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  All right.  Ms. Butterton, can you hand

18  him a copy of the indictment, or have it placed in front of him,

19  and he can have that there.  That document is simply the way

20  that the Government formally charges people with offenses.  And

21  as you can tell by just flipping through that document, there

22  are two charges that were originally contained in the

23  indictment.  Have you had an opportunity prior to today to

24  review the indictment for yourself?

25       THE DEFENDANT:  Yes, sir.

21-cr-104-RM-1     Change of Plea     11-22-2021

1    THE COURT:  Have you also had the opportunity to

2    review it with Ms. Butterton and to discuss the case in general

3    as well as any and all possible defenses with her?

4    THE DEFENDANT:  Yes, sir.  I have.

5    THE COURT:  Have you had enough time to go over these

6    matters with her?

7    THE DEFENDANT:  Yes, sir.  I have.

8    THE COURT:  Are you fully satisfied with the counsel,

9    representation, and advice given to you in this case by her?

10    THE DEFENDANT:  Yes, sir.

11    THE COURT:  In a moment I am going to ask you how you

12    wish to plead to count one of that indictment.  Before I do

13    that, there are two things I want to tell you.  First is this:

14    You have the legal right to have the charge read to you this

15    morning, word for word here in open court.  And if you want me

16    to, I will.  You can also tell me you don't need to have it read

17    to you because you read it before and you've got a copy in front

18    of you.  Either way is fine with me, but it's a choice for you.

19    Do you want me to read it to you, or no?

20    THE DEFENDANT:  No, sir.  I'm all right.

21    THE COURT:  All right.  The second thing I want to

22    tell you is this.  Obviously I set this matter for a change of

23    plea.  Despite that, you cannot, should not, must not take this

24    setting as any form of pressure on you to get you to plead

25    guilty.  You have an absolute right to enter a plea of not

21-cr-104-RM-1   Change of Plea   11-22-2021

1  guilty this morning just as you did earlier before the

2  magistrate judge.  Understood?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Then with respect to the indictment in

5  this matter, are you the Zachary Paul Anderson that is named in

6  the indictment?

7          THE DEFENDANT:  Yes, sir.  That's me.

8          THE COURT:  And with regard to count one, how do you

9  wish to plead: guilty or not guilty?

10          THE DEFENDANT:  Guilty, sir.

11          THE COURT:  Before I can accept that plea, there are

12  things I need to go over with you.  I begin with paperwork

13  that's been prepared.  You should have in front of you two

14  documents, Court Exhibit 1, which is a plea agreement; and Court

15  Exhibit 2, which is a statement by defendant in advance of the

16  plea of guilty.  Would you take those documents and look at the

17  back or last page, or near the last page of each, looking for

18  your signature.  After you have examined the documents, tell me

19  whether you signed both of them.

20          THE DEFENDANT:  Yes, sir.  I signed both.

21          THE COURT:  All right.  Ms. Butterton, did you as

22  well?

23          MS. BUTTERTON:  I did.

24          THE COURT:  And Mr. McIntyre, did you sign the plea

25  agreement?

21-cr-104-RM-1     Change of Plea     11-22-2021

1          MR. McINTYRE:  Yes, Your Honor.

2          THE COURT:  With regard to Mr. Anderson, with regard

3    to these documents, did you read them over before you signed

4    them?

5          THE DEFENDANT:  Yes, sir.  I did.

6          THE COURT:  Did you have the opportunity to review

7    them and discuss them with Ms. Butterton before you signed them?

8          THE DEFENDANT:  Yes, sir.  I did.

9          THE COURT:  Did you -- do you feel that you understand

10   what they say?

11         THE DEFENDANT:  Yes, sir.  I do.

12         THE COURT:  Did you sign each of them freely and

13   voluntarily?

14         THE DEFENDANT:  Yes, sir.  I did.

15         THE COURT:  Do they contain every single agreement

16   that you have with the government in terms of wrapping up or

17   resolving the charges against you?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Has anyone made any promise to you that is

20   not in these documents in order to get you to plead guilty?

21         THE DEFENDANT:  No, sir.

22         THE COURT:  Has anyone, whether it be the Government

23   or anyone else, threatened you, coerced you, or pressured you in

24   any way in order to get you to plead guilty?

25         THE DEFENDANT:  No, sir.

21-cr-104-RM-1     Change of Plea     11-22-2021

1     THE COURT:  I want to go over the documents with you

2  to make sure we have the same understanding as to the things

3  contained therein.  I begin with the discussion of the deal, if

4  you would.  Here is my understanding of what you've agreed to do

5  for the Government and what the Government has agreed to do for

6  you.  In terms of what you've agreed to do, you've agreed to

7  plead guilty to count one, and you've already offered to do so.

8  You have also agreed to a waiver of appellate rights that I will

9  now explain.

10     Ordinarily, when an individual is convicted of an

11  offense, he or she can appeal certain matters to a higher Court.

12  In this case, as part of your plea agreement with the

13  Government, you have agreed to waive, that is give up the right

14  to appeal, unless one of three things happens.  If any of these

15  three things occurs, then you could appeal as you normally

16  would.  But unless one of them happens, then there will be no

17  appeal, and I am the last judge who will make decisions

18  affecting your case.  Are you with me so far?

19     THE DEFENDANT:  Yes, sir.

20     THE COURT:  All right.  The things that would permit

21  you to appeal are these:  One, if I gave you a sentence that was

22  greater than the maximum penalty called for in the statute of

23  conviction -- in other words, an illegally high sentence -- you

24  could appeal it.  Number two, if I gave you a sentence that

25  although within the statutory maximum, nonetheless exceeded the

21-cr-104-RM-1      Change of Plea      11-22-2021

1    sentence called for for you under the guidelines at offense

2    level 13, you could appeal.  And then finally, you could appeal

3    if the Government appeals.  Understood?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Part of that waiver also impacts what you

6    can do in terms of coming back to me after sentencing.  As part

7    of that waiver, you have agreed that you give up, that is waive,

8    that is surrender, any right to come back here after sentencing

9    seeking any form of relief unless it is relief of one of three

10   types.

11           The things you can return to this Court seeking relief

12   for are the following:  One, if after you've been sentenced,

13   there is some change in the statute or the guidelines that

14   applies to your case, that change is a reduction in the exposure

15   that you would have faced, and that change is made applicable to

16   you even though you've already been sentenced, then you could

17   return here and ask to receive the benefit of that reduction.

18           You could also return here to pursue a charge or claim

19   or allegation that you were prejudiced by prosecutorial

20   misconduct or did not receive effective assistance of counsel.

21   Other than that, however, you waive, and that is give up the

22   right to return here after sentencing as well.  Understood?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Now, that's what you've agreed to do for

25   the Government.  What the Government has agreed to do for you is

Kevin P. Carlin, RMR, CRR

21-cr-104-RM-1     Change of Plea     11-22-2021

1  as follows:  Number one, they're going to recommend that you

2  should get the full credit for acceptance of responsibility that

3  is available under the guidelines.  Number two, they're going to

4  recommend a sentence that is within the guideline range, however

5  it is ultimately computed.  And then number three, they're going

6  to dismiss the remaining count, that being count two of the

7  indictment, at the time of sentencing.

8          That's the entire deal as I understand it.  Do you

9  agree with me that the deal has been described both completely

10 and accurately?

11         MS. BUTTERTON:  One minute, Your Honor.  I'm so sorry.

12         THE COURT:  Yes.

13         THE DEFENDANT:  Okay.  Yes.

14         THE COURT:  Tell me what it is.  I will clean it up.

15         MS. BUTTERTON:  It wasn't that.  There was a question

16 about the number of acceptance of responsibility points, which

17 is traditionally three.

18         THE COURT:  Let me go over that just to make sure

19 we're all on exactly the same page.  The way the guidelines work

20 is as follows:  If the guideline range prior to acceptance of

21 responsibility adjustment -- if the offense level, I should say,

22 is 15 or lower, then the maximum number of points that you can

23 receive is two.  If it is 16 or higher, then the maximum number

24 of points you can receive is three, and the third point has to

25 be the subject of a motion made by the Government.

Kevin P. Carlin, RMR, CRR

21-cr-104-RM-1     Change of Plea     11-22-2021

1      I interpret this as -- this plea agreement as you

2   should receive the maximum number of points that are available

3   to you.  What that means is if it's only two points, it's only

4   two points, but if for whatever reason the guideline range were

5   16 or higher, you would also, pursuant to this agreement,

6   receive the third point for acceptance of responsibility so long

7   as you don't do something between now and sentencing that's

8   inconsistent with the notion of accepting responsibility.

9           THE DEFENDANT:  Okay.

10          THE COURT:  All right?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.  With that further

13   understanding, do you agree that I have described it both

14   accurately and completely?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  You agree, Ms. Butterton?

17          MS. BUTTERTON:  I do.

18          THE COURT:  And Mr. McIntyre?

19          MR. McINTYRE:  Yes, Your Honor.

20          THE COURT:  All right.  Sir, I have to tell you that

21   nothing in the agreement binds me, but if -- all the parties

22   here are unable to bind me to anything.  What I mean by that is

23   I'm not a part of the deal.  I don't have to go along with the

24   recommendations that have been made.  I make my own decisions

25   independently of the agreement of the parties.  Understood?

21-cr-104-RM-1    Change of Plea    11-22-2021

1      THE DEFENDANT:  Yes, sir.

2      THE COURT:  The law requires that I tell you what the

3   maximum penalty is.  The maximum possible penalty in this case

4   is not more than 20 years imprisonment, not more than a

5   250,000-dollar fine, or both, not more than three years of

6   supervised release, and a 100-dollar special assessment fee.  Do

7   you understand?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  In terms of supervised release, it's a

10  little unusual, and I want to clarify what it means for you.  In

11  broad strokes, there's no parole in the federal system, and so

12  when you're finished serving your sentence, you are released to

13  the street, but at the time the Court imposes the sentence, the

14  Court can say that you will be on supervised release once you

15  are released to the street.

16      If you are placed on supervised release, it means that

17  your conduct is subject to certain terms and conditions, such

18  things as maybe get a job, don't do drugs, things of that

19  nature.  If you violate any of the conditions of supervision,

20  then you could be brought back to Court, and if I found you to

21  be in violation, I could send you back to prison even though you

22  finished the original sentence I gave you.  Understood?

23      THE DEFENDANT:  Yes, sir.

24      THE COURT:  The thing that's an odd circumstance here

25  is that in terms of your supervised release -- I'm going from

21-cr-104-RM-1    Change of Plea    11-22-2021

1  memory here.  Is it Utah that originally sentenced him?

2        MS. BUTTERTON:  Yes.

3        THE COURT:  If the District Court in Utah imposed a

4  term of supervised release on you, and I impose a term of

5  supervised release on you, by law those terms must run together.

6  The time -- the incarceration time, I can order it to be

7  concurrent or consecutive to the sentence that you are currently

8  serving.  Understood?

9        THE DEFENDANT:  Yes, sir.

10        THE COURT:  All right.  Then getting back to the

11  advisement, you know that this is a felony?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  There's no parole, so you have to serve

14  all of the time that I give you, with the exception of a certain

15  limited number of days per year that the Bureau of Prisons can

16  credit you with for good time behavior, and perhaps some

17  additional adjustments for earned time credits.  Understood?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  And then finally what I would tell you is

20  that there are consequences to being convicted of a felony, and

21  they affect your right to vote, sit on a jury, possess firearms,

22  hold certain jobs in the public or private sector.  They also

23  affect your eligibility for Government programs.  Do you

24  understand?

25        THE DEFENDANT:  Yes, sir.

21-cr-104-RM-1     Change of Plea     11-22-2021

1    THE COURT:  Or subsidized housing, even.  Do you

2  understand?

3    THE DEFENDANT:  Yes, sir.  I do.

4    THE COURT:  All right.  If you would pick up the plea

5  agreement for just a minute, what you will see is that on page

6  five, about middle of the page, there's a section or a sentence

7  that begins, the parties stipulated and agree as follows.  And

8  then after that throughout the rest of that page and carrying

9  over to the top of the following page, it says what happened in

10  this case.  Did you review that section of the agreement prior

11  to today?

12    THE DEFENDANT:  Yes, sir.  I did.

13    THE COURT:  My question to you is simple.  I was not

14  there, so I ask, is it true?  In other words, is what it says

15  happened in fact what happened?

16    THE DEFENDANT:  There was a place where it was untrue,

17  but then there's a footnote at the bottom where they corrected

18  that part.

19    THE COURT:  All right.

20    MS. BUTTERTON:  And Your Honor, I added that, since

21  we're sending over courtesy copies.

22    THE COURT:  Yeah.  I was going to say I'm not sure I

23  remember seeing it on the courtesy copy.  Hold on.

24    MS. BUTTERTON:  We just made the change in the past

25  couple days, so I apologize, but it is on the copy that the

21-cr-104-RM-1    Change of Plea    11-22-2021

1    Court should have in front of it on page five.

2           THE COURT:  And the disagreement is not with respect

3    to the physical contact or the assault.  It's with respect to

4    the claim that's set forth in the plea agreement that after it

5    occurred, instead of saying if I had metal, I would stick you,

6    you said, you want to call me a bitch, fuck you?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  All right.  With that understanding, is it

9    otherwise true?

10          THE DEFENDANT:  Yes, sir.  It is.

11          THE COURT:  All right.  Now, there's a section in here

12   that talks about the guidelines.  And I know that you have to

13   have some familiarity with the guidelines, having been through a

14   federal sentence before, but let me explain to you how they work

15   in my terms.

16          There's this group in Washington called a sentencing

17   commission.  They make these recommendations in every federal

18   case as to what they think is the right sentence.  They don't do

19   it in any kind of normal way.  Nobody shows up at sentencing.

20   They write no letters.  They make no phone calls.  Instead they

21   publish this book, and you have to figure out or decode the

22   book, if you would, to figure out what it is they're

23   recommending.

24          The way it works is you get a score.  Depending upon

25   your record, what you were convicted of, how long ago, what kind

21-cr-104-RM-1     Change of Plea     11-22-2021

1  of a sentence you got, those things contribute to your score.

2  The crime gets a score based on the presence or absence of

3  certain facts in the book.  In this case, it would be things

4  like was there bodily injury, was there physical contact, things

5  of that nature.

6          In any event, when I know your score and the crime

7  score, I simply go to this chart.  I come down the column that

8  applies to you until I hit the line that applies to the crime,

9  and that's their recommendation.  Understood?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  The law requires that I calculate the

12 recommendation correctly, and that I consider it.  Because the

13 law requires that of me, the parties, you and the Government,

14 have given me some calculations that give me at least your

15 initial computations which would help me in at least knowing how

16 the parties are looking at this, but they're just estimates.

17 Understood?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  They're not binding on me in any way, and

20 what I would tell you that's perhaps most surprising is they're

21 not binding on you or the Government either.  It's possible that

22 I could see something that no one has seen or that no one has

23 thought about and raise issues that cause you or the Government

24 or perhaps both of you to change your mind about the actual

25 calculation.  Understood?

21-cr-104-RM-1     Change of Plea     11-22-2021

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  It's not the most important thing whether

3   I agree with you or you agree with me as to what the calculation

4   is, because although the law requires that I look at the

5   guideline, calculate it, and consider it, the law does not

6   require that I follow it.  Understood?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  So, as a result, after I do whatever I do

9   by way of calculation, it's possible that I could sentence you

10  within the guideline range or higher or lower than the guideline

11  range regardless of how I sentence you.  If it is consistent

12  with the recommendation of the commission or not, if it is

13  consistent with the calculations in this plea agreement or not,

14  you're not going to be allowed to withdraw your plea of guilty

15  on that basis.  Understood?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  New topic is trial.  In terms of trial,

18  what I would tell you is this:  No one is required to plead

19  guilty.  You can instead ask to go to trial, and if you

20  requested to go to trial, it would be before a jury of 12, and

21  it would be that jury who would decide whether you were guilty

22  or not guilty of the offenses charged in the indictment.

23  Understood?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  They could not find you to be guilty

21-cr-104-RM-1    Change of Plea    11-22-2021

1  unless each and every single one of them agreed that the

2  evidence showed you to be guilty beyond a reasonable doubt.

3  Understood?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  At trial, you don't have to prove

6  anything.  You don't have to do anything.  You can simply sit

7  and watch.  The Government is the one that is required to prove

8  guilt beyond a reasonable doubt, and if they fail to do so, then

9  regardless of what you do, the jury must find you to be not

10  guilty.  Do you understand?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  In the plea agreement, over on page three,

13  there is something called elements of the offense.  I mentioned

14  that briefly for simple reason, if you were to go to trial,

15  those matters that are listed there as elements are things that

16  the Government would have to prove, each of them beyond a

17  reasonable doubt before a jury could find you to be guilty.  Do

18  you understand?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  At trial, you have the right to the

21  assistance of an attorney, meaning Ms. Butterton would be here

22  with you throughout the trial.  Witnesses testify in front of

23  both you and her so that you can see and hear and understand the

24  case against you.  Evidence is offered in front of both you and

25  her as well.  Do you understand?

21-cr-104-RM-1    Change of Plea    11-22-2021

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Ms. Butterton can cross examine or

3    question any witness who testifies against you.  Do you

4    understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And you can present witnesses and evidence

7    at this trial as well, if that's what you wanted to do.  Do you

8    understand?

9          THE DEFENDANT:  Yes.

10          THE COURT:  The way I put it is trial is kind of a

11    two-way street.  Each side gets an equal opportunity to call

12    witnesses, challenge the other side's witnesses, argue in front

13    of the jury in favor of their position.  Do you understand?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  In terms of your side or your opportunity,

16    if you are unable to pay for the cost of the defense, whether

17    that be attorneys' fees, expert fees, or any other type of fee,

18    cost, or expense, all of that would be paid for you by the

19    Government.  Do you understand?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  But remember what I told you earlier.  The

22    burden is on the Government to prove guilt beyond a reasonable

23    doubt.  What that means is that that burden stays on them

24    regardless of what you do, regardless of whether you put on a

25    defense or not.  Understood?

21-cr-104-RM-1     Change of Plea     11-22-2021

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  At trial, you have a special right that is

3  unlike that of any other witness.  No one can make you testify

4  at trial.  You get to decide whether you will testify.  If you

5  want to, you can, and no one can stop you.  If you don't want

6  to, no one can make you, and you cannot even be called to the

7  witness stand in front of the jury.  Do you understand?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  You don't have to decide now whether you

10  would testify.  You wouldn't have to decide until the middle of

11  the trial.  After you had heard the Government's case and you

12  saw and understood what the case against you was, that's the

13  earliest point in time that you would have to make your

14  decision.  Understood?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  If you were to decide that you did not

17  wish to testify, the jury would be told that they cannot

18  consider that fact in any way.  They cannot even think about it

19  on the issue of guilt or draw any inference at all from that

20  fact.  Understood?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  If you were to go to trial and be

23  convicted, you would have the right to appeal the conviction as

24  well as any sentence, and that appellate right following a trial

25  would not be limited in the manner in which you have voluntarily

21-cr-104-RM-1     Change of Plea     11-22-2021

1  chosen to limit your appellate rights as part of the plea

2  agreement in this case.  Do you understand?

3          THE DEFENDANT:  Yes, sir.  I do.

4          THE COURT:  If you could not afford an appeal

5  following a trial, an attorney would be appointed for you at no

6  cost to you, and any and all costs associated with the trial --

7  excuse me -- with the appeal would be paid for you by the

8  Government.  Understood?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  If you plead guilty, there is no trial.

11  There is no trial because by pleading guilty you waive, that is

12  give up the right to go to trial, as well as all of the rights

13  that go along with the trial.  Do you understand?

14          THE DEFENDANT:  Yes, sir.  I do.

15          THE COURT:  And there will be no further examination

16  of the issue of guilt, because you admit your guilt by pleading

17  guilty.  Do you understand?

18          THE DEFENDANT:  Yes, sir.  I do.

19          THE COURT:  Sir, is there anything at all about a

20  trial that you don't understand or want to ask about?

21          THE DEFENDANT:  No, there's not.

22          THE COURT:  I put it like this in summary:  Choosing

23  to go to trial is turning to the Government and saying to the

24  Government's attorney, hey, prove it beyond a reasonable doubt.

25  Pleading guilty is saying something very different to him.  It's

21-cr-104-RM-1    Change of Plea    11-22-2021

1   saying in essence, you don't have to prove it, because I admit

2   it.  Do you understand?

3         THE DEFENDANT:  Yes, sir.  I do.

4         THE COURT:  I have now covered everything that I need

5   to.  Have you understood everything that we've talked about here

6   today?

7         THE DEFENDANT:  Yes, sir.  I understand.

8         THE COURT:  Is there anything at all that you do not

9   understand and want to ask me about?

10        THE DEFENDANT:  No, sir.

11        THE COURT:  We're at the end of this hearing.  This

12  will be the last time I ask.  Do you still wish to plead guilty

13  to count one of the indictment?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Are you doing so of your own free will?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Are you in fact guilty?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  Ms. Butterton, do you know of any reason I

20  should not permit Mr. Anderson to plead?

21        MS. BUTTERTON:  No, Your Honor.

22        THE COURT:  And Mr. McIntyre, do you?

23        MR. McINTYRE:  No, Your Honor.

24        THE COURT:  The executed plea documents are admitted

25  for purposes of this hearing.  Based on those documents, my

21-cr-104-RM-1     Change of Plea     11-22-2021

1   observations of the defendant, statements of counsel, and the

2   record developed here today, it is the finding of the Court in

3   the case of the United States versus Zachary Paul Anderson that

4   the defendant is fully competent and capable of entering an

5   informed plea, that he is aware of the nature of the charges and

6   the consequences of the plea, that he has had the benefit of

7   competent counsel, and that the plea of guilty is a knowing and

8   voluntary one, supported by an independent basis in fact

9   containing each of the essential elements of the offense.

10          The plea is therefore accepted, and the defendant is

11  now adjudged guilty of count one of the indictment.  I defer

12  acceptance of the plea agreement until the sentencing hearing.

13  Notwithstanding that, at this time I find and conclude that the

14  waiver of appellate rights contained therein is a waiver which

15  has been made knowingly, voluntarily, and intelligently.

16          Any and all pending motions are denied as moot.

17  Sentencing is set for February 18 at 3:00 p.m.  Mr. Anderson,

18  you're going to be contacted by someone from the probation

19  department in advance of that.  What they do is they write a

20  report about you that I look at and consider among other things

21  in deciding what is the appropriate sentence.  They're only

22  going to get it right if you cooperate with them, and I urge you

23  to do so.

24          I tell you that Ms. Butterton can be present with you

25  when the interview occurs.  I also tell you that when a draft of

21-cr-104-RM-1     Change of Plea     11-22-2021

1  the report has been prepared, you will have an opportunity to

2  review it before it is finalized, and to suggest changes,

3  corrections, or additions.  Beyond that, at sentencing, you will

4  have an opportunity to speak directly to me if you so desire.

5  Do you understand?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  In connection with the report, I order

8  that any information released, data, or material provided to the

9  probation department -- I should say the probation office by the

10  defendant, shall be used by the probation office only for the

11  preparation of the report, and for no other purpose without

12  further order of the Court.  The defendant is in Marshals'

13  custody.  He is remanded.  Anything further on behalf of the

14  Government?

15           MR. McINTYRE:  No, Your Honor.

16           THE COURT:  Or the defendant?

17           MS. BUTTERTON:  No, Your Honor.

18           THE COURT:  All right.  Recess.

19       (Proceedings concluded at 11:03 a.m.)

20

21

22

23

24

25

1                           REPORTER'S CERTIFICATE

2

3

4          I, KEVIN P. CARLIN, Official Court Reporter for the

5    United States District Court for the District of Colorado, a

6    Registered Merit Reporter and Certified Realtime Reporter, do

7    hereby certify that I reported by machine shorthand the

8    proceedings contained herein at the time and place

9    aforementioned and that the foregoing pages constitute a full,

10   true, and correct transcript.

11          Dated this 29th day of June, 2022.

12

13

14

15

16                              _____
                                Kevin P. Carlin, RMR, CRR
17                              Official Court Reporter

18

19

20

21

22

23

24

25

                        Kevin P. Carlin, RMR, CRR